IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND


DAVID MYRON SUIRE                         *
                    Plaintiff,
           v.                             *    CIVIL ACTION NO. JKB-13-2320

CONMED HEALTHCARE                         *
DR. LINO QUILO[1]
KEVIN JOHNSON, P.A.                       *
NURSE MICHELLE AUTREY
                    Defendants.           *

                                       *****


MEMORANDUM

David Myron Suire ("Suire") brought this 42 U.S.C. § 1983 complaint while held as a pre-

trial detainee at the Wicomico County Detention Center ("WCDC").  The original complaint named

the Wicomico County Detention Center ("WCDC"), Director Douglas C. Devenyns, and

"correctional officers" as defendants.  On April 14, 2014, defendants' court-construed motion for

summary judgment was granted, the claims against the original defendants were dismissed, and

plaintiff was permitted to amend his complaint to name ConMed Healthcare[2] as a defendant.  ECF

Nos. 22 & 23.  Suire was subsequently permitted to amend his complaint to name Dr. Lino Quilo,

Physician's Assistant ("P.A.") Kevin Johnson,[3] and Nurse Michelle Autrey as defendants.  ECF

Nos. 24 & 28.  Defendants filed a motion for summary judgment, which Suire has opposed.  ECF

---

[1]        The docket shall be amended to reflect the proper spelling of this defendant's name as
Lino Quilo.

[2]        The Court notes that this defendant has variously referred to itself as Conmed Healthcare
Management, Inc. (ECF Nos. 27 & 35), and Conmed, Inc. (ECF No. 30).  In this opinion, the Court will
refer to it as Conmed.

[3]        According to defendants, Kevin Johnson is a P.A., not a doctor as named by Suire.  The
docket shall be amended accordingly.

Nos. 35 & 37.  Suire has also filed motions for injunctive relief and to further amend his complaint.[4]

ECF Nos. 38 & 41.

## I. BACKGROUND

Suire claims that while housed at WCDC in May of 2013, a peeling paint flake lodged in his

eye while he was taking a shower.  He was taken down to the medical department to have his eye

flushed.  Suire contends that he submitted a number of sick-call slips, his eye was again flushed, and

he received eye drops.[5]  He complains that he has not received an outside appointment despite "a

blur" in his right eye.[6]  ECF No. 1.  In his amended complaint, he contends that defendants were not

able to do anything for his eye "which caused it to get worse" and they "neglected" to provide him

proper treatment which caused blindness in his right eye.  ECF No. 24.

## II. LEGAL STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986) (citing predecessor to current Rule

56(a)).  The burden is on the moving party to demonstrate the absence of any genuine dispute of

material fact.  *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157 (1970).  If sufficient evidence exists

---

[4]        Defendants have filed an opposition to Suire's motion for injunctive relief.  ECF No. 39.

[5]        Suire's original complaint also alleged that his legal mail was given to other inmates and that
WCDC staff is "opening legal mail."  ECF No. 1.  His access-to-courts claim was dismissed without
prejudice.  *See* ECF No. 22, pg. 5 at n. 3.

for a reasonable jury to render a verdict in favor of the party opposing the motion, then a genuine dispute of material fact is presented and summary judgment should be denied.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  However, the "mere existence of a scintilla of evidence in support of the plaintiff's position" is insufficient to defeat a defendant's motion for summary judgment.  *Id.* at 252. The facts themselves, and the inferences to be drawn from the underlying facts, must be viewed in the light most favorable to the opposing party, *Scott v. Harris,* 550 U.S. 372, 378 (2007); *Iko v. Shreve,* 535 F.3d 225, 230 (4th Cir. 2008), who may not rest upon the mere allegations or denials of his pleading but instead must, by affidavit or other evidentiary showing, set out specific facts showing a genuine dispute for trial, Fed.R.Civ.P. 56(c)(1). Supporting and opposing affidavits are to be made on personal knowledge, contain such facts as would be admissible in evidence, and show affirmatively the competence of the affiant to testify to the matters stated in the affidavit.  Fed. R. Civ. P. 56(c)(4).  For reasons to follow, defendant's motion for summary judgment shall be granted and the complaint shall be dismissed.  *See* Local Rule 105.6 (D. Md. 2014).

## III. ANALYSIS

Defendants' counsel argues that Suire's eye complaints began on May 2, 2013, at which time he complained that paint chips got in his eye while he was showering.  ECF No. 35, Ex. A at pg. 79.  The sclera of his right eye appeared red and irritated and was irrigated by health care staff.  *Id*. Defendants maintain that on May 6, 2013, Suire was seen by Dr. Quilo for his eye issue[7] and he did

---

[6]    In Suire's supplemental complaint, he stated that he has been to the doctor 3 or 4 times and told that although pieces of paint still remain in his eye, it would do more harm than good to remove them. ECF No. 14.

[7]    Defendants reference an exhibit in support of this claim.  However, the document in question contains no supporting date or physician's signature.  ECF No. 35 at pg. 79.

not voice a complaint about his eye again until July 10, 2013, although he did complain about back, sinus, and stomach pain and the receipt of his medication in the interim two-month period.  ECF No. 35, Ex. A at pgs. 72-78.  In response to his complaint, on July 12, 2013, Suire was seen by a nurse, given a visual acuity test, and referred to P.A. Johnson.  Suire was then referred for a consultation outside of WCDC when his eye complaints continued after a follow-up visit with P.A. Johnson on July 23, 2013.  *Id.*, Ex. A at pgs. 191-95.  On August 13, 2014, he was taken to Retina Consultants of Delmarva in Salisbury, Maryland and seen by one of its physicians, Dr. Zaaira Ahmad.  *Id.*, Ex. A at pgs. 68, 172, & 176-178.  Dr. Ahmad noted that there was no inflammation, no corneal scarring, and no retinal lesions to Suire's right eye.  *Id.*  She further observed that there were no foreign bodies detected in the eye.  Dr. Ahmad recommended seeking a further workup with an Electroretinogram ("ERG")[8] and, in any event, her seeing Suire in two weeks for a follow-up appointment.  She further suggested placing Suire on an "artificial tears" treatment.  *Id.*

On August 30, 2013, Suire was seen by Dr. Ahmad for a follow-up appointment.  *Id.*, Ex. A at pgs. 66, 179-180 & 188.  Ahmad again noted that there was no clear etiology for Suire's complaints, as the exam and imaging were all normal.  Ahmad observed that although an ERG could be considered, given Suire's normal test results, it was unclear if the ERG would "elucidate etiology."  Ahmad asserted that there was no retinal pathology that would require monitoring or treatment and that there was no ocular cause for Suire's complaints.[9]  *Id.*

---

[8]     Electroretinography is a test to measure the electrical response of the eye's light-sensitive cells, called rods and cones.  These cells are part of the retina (the back part of the eye).  *See* http://www.nlm.nih.gov/medlineplus/ency/article/003388.htm.

[9]     Dr. Ahmad "strongly suspected" that Suire was "malingering."  ECF No. 35, Ex. A at pg. 180.

The health care providers at WCDC sought approval to take Suire to a facility to conduct an ERG. *Id*., Ex. A at pg. 181.  Approval was given on September 6, 2013.  Following the approval, however, the health care providers at WCDC attempted to find a location that would perform an ERG on Suire.  The Wilmer Eye Clinic ("Wilmer") and University of Maryland Hospital were contacted and both facilities indicated that they did not perform the test on inmates.  ECF No. 35, Ex. A at pg. 59.  On October 17, 2013, Suire was given an x-ray as an alternative.  *Id*. at pg. 195. The x-ray was normal.  In addition, a CT was performed on October 24, 2013.  *Id*., Ex. A at pg. 196. Three foreign particles "up to 1.5 mm" in length were found along the lateral aspect of Suire's right eye globe.  Defendants claim that despite two prior exams with a retina specialist and an x-ray, these particles had not been previously detected.  On October 30, 2013, Suire was seen by P.A. Johnson and informed the P.A. that he believed that one of the particles had come out.  *Id*., Ex. A at pg. 57. Suire was directed to continue to flush out his eye and to use artificial tears to remove any additional particles from his eye.  Defendants maintain that until Suire's transfer to the state correctional system in February of 2014, he was periodically seen by P. A. Johnson for irrigation of his eye and was provided eye drops and artificial tears to use as needed.  *Id*., Ex. A at pgs. 36, 58, 47, 52, and 56. The record shows that Suire continued to complain that "it still feels like something [is] moving around in my eye."  *Id*., Ex. A at pgs. 43, 48-49 & 54-55.

In his opposition response, Suire seemingly complains that defendants' constitutional liability is grounded in the fact that he has lost sight in his right eye "due to something that got into the eye." ECF No. 37.  He claims that he was denied proper treatment and that defendants accepted the ophthalmologist's presumption that he was malingering.  Suire further questions why he was unable to obtain treatment at Wilmer while confined at WCDC, but was seen at Wilmer when transferred to the State prison system.  ECF No. 37 at Attachments.

Suire, who is now confined in the Maryland Department of Public Safety & Correctional Services ("DPSCS"), seeks a preliminary injunction to obtain medical treatment and protective eye wear to prevent further damage to his eyes.  ECF No. 38.  His request for emergency relief shall be denied.  The purpose of injunctive relief is to "protect the status quo and to prevent irreparable harm during the pendency of a lawsuit, ultimately to preserve the court's ability to render a meaningful judgment on the merits."  *In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 525 (4th Cir. 2003). It may take the form of a preliminary injunction or a temporary restraining order.  A preliminary injunction, unlike a temporary restraining order, cannot issue without notice to the non-movant.  *See* Fed. R. Civ. P. 65(a)(1); *U.S. Dep't of Labor v. Wolf Run Mining Co.*, 452 F.3d 275, 281 n.1 (4th Cir. 2006) (comparing Fed. R. Civ. P. 65(a) with Fed. R. Civ. P. 65(b)).

Given Suire's claims and the materials presented to this court, he has failed to show that he will be subject to immediate harm if his relief request is not granted.  He has not demonstrated (1) by a "clear showing" that he is "likely to succeed on the merits" at trial, (2) he is "likely to suffer irreparable harm in the absence of preliminary relief," (3) "the balance of equities tips in his favor," and (4) "an injunction is in the public interest," as is required for injunctive relief.  *See Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20-24 (2008); *see Dewhurst v. Century*

*Aluminum Co.*, 649 F.3d 287, 290 (4th Cir. 2011).  The moving party must satisfy each of these requirements as articulated.  *Real Truth About Obama, Inc. v. Federal Election Comm'n*, 575 F.3d 342, 347 (4th Cir. 2009), *vacated on other grounds*, 555 U.S.1089 (2010), *reinstated in relevant part on remand*, 607 F.3d 355 (4th Cir. 2010) (per curiam).

Due to his pre-trial detainee status, Suire's constitutional claims are analyzed under the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment.  As a practical matter, however, courts do not distinguish between the Eighth and Fourteenth Amendments in the context of a pre-trial detainee's Section 1983 claim.  *See Hill v. Nicodemus,* 979 F.2d 987, 990–92 (4th Cir. 1992).  To establish a claim of this nature Suire must satisfy two requirements.  First, he must satisfy the "objective" component by illustrating a serious medical need.[10]  *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995); *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998).  If Suire proves this first element, he must then prove the second subjective component of the Eighth Amendment standard by showing deliberate indifference on the part of defendants.  *See Wilson v. Seiter*, 501 U.S. 294, 303 (1991) (holding that claims alleging inadequate medical care are subject to the "deliberate indifference" standard outlined in *Estelle*, 429 U.S. at 105-06).  "[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result."

---

[10]    A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Iko v. Shreve*, 535 F.3d at 241 (citing *Henderson v. Sheahan,* 196 F.3d 839, 846 (7th Cir. 1999)); *see also Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006) (citing *Hill v. Dekalb Reg. Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994)); *see also Monmouth County Correctional Inst. Inmates v. Lanzaro,* 834 F.2d 326, 347 (3d Cir. 1987); *Creech v. Nguyen*, 153 F.3d 719, 1998 WL 486354, at *5 (4th Cir. 1998).

*Farmer v. Brennan*, 511 U.S. 825, 835 (1994). Defendants "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and must also draw the inference." *Id*. at 837. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter…becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844.

Inmates do not have a constitutional right to the treatment of their choice, *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986), and disagreements between medical staff and an inmate over the necessity for or extent of medical treatment do not rise to the level of constitutional injury. *See Estelle*, 429 U.S. at 105-06; *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *see also Fleming v. LeFevere*, 423 F. Supp. 2d 1064, 1070-71 (C.D. Cal. 2006).

To the extent the complaint names ConMed as a defendant based solely upon vicarious liability, circuit law is clear. Principles of municipal liability under § 1983 apply equally to a private corporation. Therefore, a private corporation is not liable under § 1983 for actions allegedly committed by its employees when such liability is predicated solely upon a theory of respondeat superior. *See Austin v. Paramount Parks, Inc.,* 195 F.3d 715, 727-28 (4th Cir. 1999); *Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982). Consequently, the complaint against ConMed shall be dismissed.

Further, the exhibits show that Suire is a 44-year-old male who periodically reported problems with his right eye to WCDC medical staff beginning in May of 2013, arising out of alleged paint flakes getting into his eye.  He was seen by WCDC nurses, P.A.s, and physicians, had his eye flushed, and was subsequently referred to an outside retina clinic for evaluation, where he was twice seen by an ophthalmologist, who found no abnormalities.  Although the doctor had reservations that an ERG would be helpful for diagnostic purposes, WCDC obtained approval to conduct the test.  The test was not, however, conducted, but a CT scan revealed foreign objects in plaintiff's eye, which were partially removed with irrigation.  While it does appear that Suire did not receive the care as rapidly as he would have liked, the delays which occurred do not appear to have transpired through the intentional acts of health care staff.  Although Suire may be dissatisfied with the initial conservative course of treatment, the subsequent evaluations, tests, and treatments met the minimum constitutional requirements.  No constitutional violation has been demonstrated.

Suire has recently filed a document seeking to further amend his complaint to include Wexford Medical Services[11] as a defendant.  ECF No. 41.  The letter, construed as a Motion to Amend, shall be denied.  This case has been pending for over eighteen months.  Suire originally sued WCDC correctional staff and was twice permitted to amend his complaint to name healthcare staff at WCDC.  Those defendants have now filed a responsive pleading.  He may not further amend his complaint to name medical care defendants associated with providing him care in the state

---

[11]     Wexford Medical Services is the private health care concern under contract to provide medical care to DPSCS inmates.

correctional system.[12]

## IV.     CONCLUSION

Having found no genuine dispute of material fact justifying a trial on the merits in this case,

defendants' motion for summary judgment shall be granted.[13]   A separate Order effecting the rulings

made in this opinion is entered herewith.


Date:  April   13, 2015                          _____/s/_____
                                                 James K. Bredar
                                                 United States District Judge

---

[12]     Should Suire wish to sue medical personnel for alleged civil rights violations regarding the medical treatment (or lack thereof) received while confined in the DPSCS, he may file a new complaint.  A 42 U.S.C. § 1983 complaint form packet shall be mailed to him.

[13]     Accompanying defendants' dispositive motion is a 197-page exhibit containing plaintiff's medical record.  Defendants' supporting memorandum cites to isolated portions of the record that concern plaintiff's eye complaints and treatment.  *See* ECF No. 35, Mem. at pgs. 3 & 9-11.  Defendants have put into the public record a large amount of plaintiff's medical record, most of which is irrelevant to the case.  Some of these records involve highly sensitive personal mental health information.  Defendants will not be allowed to place plaintiff's medical history out for public scrutiny when a declaration presented under Fed. Rule of Evidence 803(10) would have sufficed to demonstrate that defendants did not impede plaintiff from receiving constitutionally adequate care for his right eye.  Counsel is cautioned to be more careful in submitting such personal information in the future.  I will direct the Clerk to seal the record in its entirety in order to protect plaintiff's privacy.